[Nos. 45873, 45874, 45966. En Banc. December 31, 1980.]

THE STATE OF WASHINGTON, *Appellant,* v. TACOMA–PIERCE COUNTY MULTIPLE LISTING SERVICE, ET AL, *Respondents.*

THE STATE OF WASHINGTON, *Appellant,* v. TRI–CITY BOARD OF REALTORS, INC., *Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Slade Gorton, Appellant,* v. SPOKANE BOARD OF REALTORS, *Respondent.*

*Slade Gorton, Attorney General, Thomas L. Boeder* and *John E. Lamp, Senior Assistants,* and *Jay Uchida, James M. Beaulaurier, Craig C. Beles,* and *David A. Saraceno, Assistants,* for appellant.

*Mann, King, Anderson, Bingham & Scraggin,* by *Quinby R. Bingham,* for respondents Tacoma–Pierce County Multiple Listing Service, et al.

*Raekes, Rettig & Osborne,* by *Philip M. Raekes,* for respondent Tri–City Board of Realtors.

*Winston & Cashatt,* by *Robert J. McNichols* and *Joel C. McCormick III,* for respondent Spokane Board of Realtors.

DOLLIVER, J.—On June 14, 1978, the Attorney General filed substantially identical antitrust actions against the Tri–City Board of Realtors, Inc., the Spokane Board of Realtors, the Tacoma–Pierce County Multiple Listing Service and the Tacoma–Pierce County Board of Realtors. The complaints alleged violations of the Consumer Protection Act (RCW 19.86), specifically RCW 19.86.020:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

and RCW 19.86.030:

> Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful.

The specific act alleged to violate the Consumer Protection Act was "to deny brokers who are not members of the Board of Realtors access to the MLS [Multiple Listing Service] services". The effects of the violations are claimed to be:

> (a) To suppress and eliminate competition by persons who are not members of the Board of Realtors.
> (b) To create artificial entry barriers into the trade and commerce described above.
> (c) To deny consumers the benefits of free and open competition.
> (d) To artificially increase the commissions paid by consumers.

No violations were alleged by the Attorney General of any part of RCW 18.85 concerning real estate brokers and salespersons.

The Multiple Listing Service is described in the complaint as follows:

> The MLS is an arrangement between brokers in the Pierce County [Spokane County and Benton County] area[s] in which any member broker is authorized to sell property exclusively listed with any other member broker. Member brokers obtain exclusive listings from home sellers and register such listings with the MLS. Such listings give all member brokers the right to sell the homes and permit the brokers obtaining the listings to prevent the sale of the homes through brokers who are not members of the MLS. The MLS compiles the listings, together with detailed information regarding the listed homes, and disseminates it in publications to all member brokers, who attempt to sell the listed homes. Most homes sold in the Pierce County [Spokane County and Benton County] area[s] are sold through listings with the MLS. Membership in the MLS is important to a broker's ability to engage in the trade and commerce described above because only MLS members have the right to sell homes listed with the MLS, and only MLS members have the right to list homes with the MLS and to have access to MLS listing information.

In the Tacoma–Pierce County and Tri–Cities cases, the court granted a motion to dismiss for failure to state a claim upon which relief can be granted (CR 12(b)(6)), while in the Spokane case the trial court granted defendant a summary judgment. The cases were consolidated for consideration by this court.

While the reasons given by each trial court for its actions varied, there were four bases for the actions taken which we will consider in the following order: (1) exhaustion of remedies; (2) multiple listing services are a regulated activity under RCW 19.86.170; (3) primary jurisdiction; and (4) standing.

I

 The doctrine of the exhaustion of remedies was described in *Wright v. Woodard*, 83 Wn.2d 378, 381, 518 P.2d 718 (1974), where we held that "when an adequate administrative remedy is provided, it must be exhausted

before the courts will intervene." *See also Sator v. Department of Revenue,* 89 Wn.2d 338, 572 P.2d 1094 (1977). The test for the imposition of the doctrine was carefully spelled out in *Retail Store Employees Local 1001 v. Washington Surveying & Rating Bureau,* 87 Wn.2d 887, 558 P.2d 215 (1976). There we said administrative remedies must be exhausted before the courts will intervene: (1) "when a claim is cognizable in the first instance by an agency alone"; (2) when the agency's authority "'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties"; and (3) when the "relief sought . . . can be obtained by resort to an exclusive or adequate administrative remedy". *Retail Store Employees,* at 906, 907, 909.

Defendants assert the complaint falls under the doctrine of the exhaustion of remedies and that the Real Estate Commission and the Department of Licensing must first render an administrative decision before the matter can be considered by the courts. We disagree. This is an action under RCW 19.86 and involves violations of the Consumer Protection Act. There is no allegation of any violation of RCW 18.85. Violations of the Consumer Protection Act are not cognizable by either the Department of Licensing or the Real Estate Commission but rather by the courts. RCW 19.86.080; *Lightfoot v. MacDonald,* 86 Wn.2d 331, 337, 544 P.2d 88 (1976). There is no authority given to the Department of Licensing or the Real Estate Commission to regulate or enjoin multiple listing associations. No powers to assess penalties are given either generally or with reference to violations of the Consumer Protection Act. There is no remedy in either the Department of Licensing or the Real Estate Commission to be exhausted; the doctrine does not apply.

## II

In considering the question of primary jurisdiction,

it must again be remembered these are antitrust and restraint of trade cases brought under the Consumer Protection Act. They do not concern RCW 18.85, the real estate brokers' and salesmen's statutes. The legislature in RCW 19.86.080, .140 has directed that the Attorney General is the sole government official or agency to enforce the Consumer Protection Act. A full discussion of the applicability of the doctrine of primary jurisdiction relative to the Department of Licensing, the Real Estate Commission, and Consumer Protection Act actions is found in the companion case to this case. *In re Real Estate Brokerage Antitrust Litigation,* 95 Wn.2d 297, 622 P.2d 1185 (1980). There, at pages 302–03, we stated a threefold test for the application of primary jurisdiction:

> 1. The administrative agency has the authority to resolve the issues that would be referred to it by the court. In the case of antitrust actions, the statutory authority of the agency in some way must limit the applicability of the antitrust laws;
> 2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and
> 3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme.

(Citation omitted.)

The defendants meet none of these tests. Nothing in the statutes indicates the courts should defer to the administrative body for its view. The only statutory reference to multiple listing associations is RCW 18.85.010(8), which defines multiple listing associations, and RCW 18.85.400 which sets forth entrance requirements. RCW 18.85 does not give the Department of Licensing or the Real Estate Commission any regulatory power over antitrust violations by a multiple listing service. While a person licensed under RCW 18.85 may, for the commission of certain acts, have a

license suspended, revoked or denied (RCW 18.85.230), this does not apply to a multiple listing association but only to individual license holders. There is no "special competence" given to the agencies to determine violations of the Consumer Protection Act by a multiple listing association. The statutory authority of the agency does not in any way limit the applicability of the antitrust laws; in fact, as is made apparent by the statute, it is quite the opposite:

In no event shall the real estate commission . . .

. . .

(5) Require the applicant to follow any other rules of the association which apply to all the members of such association: *Provided, That such other rules do not violate federal or state law: Provided,* That nothing in this 1969 amendatory act shall be construed to limit the authority of any real estate multiple listing association to engage in any activities which are not otherwise prohibited by law.

(Italics ours.) RCW 18.85.400(5). Under these circumstances, we hold it is an abuse of discretion to apply the doctrine of primary jurisdiction.

### III

The permitted actions or transactions exception, RCW 19.86.170, provides:

*Nothing in this chapter shall apply to . . .* [1] *actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States . . .* [and 2] *Provided, further, That actions or transactions specifically permitted within the statutory authority granted to any regulatory board or commission established within Title 18 RCW shall not be construed to be a violation of chapter 19.86 RCW . . .*

(Italics ours.)

■ We held in *In re Real Estate Brokerage Antitrust Litigation, supra,* that the correct determination of legislative intent is that only clause [2] applies to RCW Title 18 agencies. While both [1] and [2] require that the regulatory agency act under statutory authority, for RCW Title 18

agencies the questioned actions or transactions must have been specifically permitted, *i.e.,* the regulatory agency must have taken some overt affirmative action indicating approval. *See* Comment, *The Scope of the Regulated Industries Exemption Under the Washington Consumer Protection Act,* 10 Gonz. L. Rev. 415, 427 (1975). Here there was no affirmative action taken by either the Department of Licensing or the Real Estate Commission to approve the action. There was no specific permission granted.

Furthermore, the multiple listing section of the real estate brokers' and salesmen's statute (RCW 18.85.400) states that "In no event shall the real estate commission approve any entrance requirements which shall be more restrictive on the person applying to join a real estate multiple listing association than [the requirements listed in the statutes]". There is nothing in RCW 18.85 which confers on the Department of Licensing or the Real Estate Commission the authority to approve the restrictions for membership in a multiple listing service which were allegedly required by defendants. RCW 19.86.170 does not provide an exemption for defendants.

### IV

Finally, it is claimed that, since RCW 18.85.350 allows only the Director of the Department of Licensing and the appropriate county prosecuting attorney to enforce RCW 18.85, the Attorney General has no standing. While true, this is beside the point. As stated before, this is not an action under RCW 18.85. The action is under RCW 19.86, and the Attorney General is specifically authorized to bring these actions in superior court. RCW 19.86.080.

Reversed.

UTTER, C.J., ROSELLINI and WILLIAMS, JJ., and FORREST and HAMILTON, JJ. Pro Tem., concur.

BRACHTENBACH, J. (dissenting)—Much of the discussion concerning the doctrine of primary jurisdiction is contained

in the companion case of *In re Real Estate Brokerage Antitrust Litigation,* 95 Wn.2d 297, 622 P.2d 1185 (1980). This dissent is applicable to both cases, but is written in this case because of the particularly strong and persuasive reasons the doctrine should be applied to the multiple listing associations involved herein.

The majority is too grudging in its analysis and application of the doctrine of primary jurisdiction. The question actually is not one of jurisdiction as that word is ordinarily employed, *i.e.,* the power to hear and determine. Rather,

> The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court.

3 K. Davis, *Administrative Law* § 19.01, at 3 (1958). Perhaps the doctrine is characterized more accurately as preliminary resort or prior resort. *Great N. Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 290, 66 L. Ed. 943, 42 S. Ct. 477 (1921).

> The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that "administrative expertise" requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts.

3 K. Davis, *Administrative Law, supra* at 5.

The one Washington case cited by the majority in support of its position has been criticized by a leading text writer.

> When a court has no jurisdiction, the doctrine of primary jurisdiction is irrelevant. The Washington Supreme Court was mistaken in citing the Treatise and in discussing the doctrine of primary jurisdiction in a case in which the court had no jurisdiction.

K. Davis, *Administrative Law* § 19.08, at 640 (Supp. 1970). The only holding of the court in point is that the plaintiffs there did not allege an act which constituted a wrong independent of the packers and stockyards act which had exclusive initial jurisdiction. *Schmidt v. Old Union Stockyards Co.,* 58 Wn.2d 478, 489, 364 P.2d 23 (1961). Obviously it is no authority for the position taken by the majority.

The majority in *In re Real Estate Brokerage Antitrust Litigation* holds at pages 302–03:

> The judicial deference called for in the rule of primary jurisdiction requires that:
> 1. The administrative agency has the authority to resolve the issues that would be referred to it by the court. In the case of antitrust actions, the statutory authority of the agency in some way must limit the applicability of the antitrust laws. . .;
> 2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues . . .; and
> 3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme.

(Citations omitted.)

I can find no authority which states that these factors control application of the doctrine; apparently they have been created by the majority from bits and pieces of case and text comments. We are not favored with identification of the specific sources.

However, let us examine the components of the 3–part rule formulated by the majority.

First the majority holds that the agency must have authority to resolve the issue. In fact the majority holds that primary jurisdiction should not be invoked if the agency is powerless to grant the relief requested. Such is not the law.

> [S]ince the doctrine is based upon the necessity of accommodating the judicial and the administrative, the power of the agency to grant the particular relief

requested should be treated as irrelevant. The critical question should be the nature of the inquiry, for the doctrine rests on the premise that, if administrative questions and technical matters are presented for determination, the agency must act before the court can adjudicate.

The leading decisions bear out the proposition that the doctrine is applicable irrespective of the power of the agency to grant the type of relief sought. Thus, in the *Cunard* case [*United States Navigation Co. v. Cunard S.S. Co.,* 284 U.S. 474, 76 L. Ed. 408, 52 S. Ct. 247 (1932)] the plaintiff sought injunctive relief, which the agency could not grant. Likewise, in a number of cases outside the antitrust field the Supreme Court has applied the principle that the power of the agency to grant the relief requested is immaterial.

von Mehren, *The Antitrust Laws and Regulated Industries: The Doctrine of Primary Jurisdiction,* 67 Harv. L. Rev. 929, 945, 946 (1954). *See General Am. Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 84 L. Ed. 361, 60 S. Ct. 325 (1940); *Smith v. Hoboken R.R., Warehouse & S.S. Connecting Co.,* 328 U.S. 123, 90 L. Ed. 1123, 66 S. Ct. 947 (1946); *Wisconsin & Mich. Transp. Co. v. Pere Marquette Line Steamers,* 210 Wis. 391, 245 N.W. 671 (1932); *Bell Potato Chip Co. v. Aberdeen Truck Line,* 4 Fed. Carr. Cas. 171 (1946).

Next, the majority contends that the statutory authority of the agency must in some way limit the applicability of the antitrust laws.

Again, no authority is cited for this specific threshold requirement. I will discuss our applicable statutes later; suffice it now to conclude that the majority is not correct in insisting upon agency power to limit antitrust laws.

[T]he problem is not one of application of the antitrust laws but is one of accommodation of the antitrust policy to the regulatory policy. This fact needs special emphasis, because it furnishes the foundation for the law of primary jurisdiction with respect to the antitrust laws. The courts are obviously well equipped to make initial decisions involving application of the antitrust policy. But, before the particular regulatory agency has defined

the particular regulatory policy in the particular case, the courts are not well equipped to make initial decisions involving accommodation of the antitrust policy to the regulatory policy.

3 K. Davis, *Administrative Law* § 19.05, at 25 (1958). *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 34 L. Ed. 2d 525, 93 S. Ct. 573 (1973). Referring to the *Ricci* case, Professor Davis states:

Even if a regulatory agency's authority reaches only a very small corner of a problem, an antitrust action must be stayed until the agency makes its determination . . . The court made clear that the Commission could not decide the question of immunity and that its rule did not take precedence over antitrust policies.

K. Davis, *Administrative Law of the Seventies* § 19.06, at 441 (1976).

The second major element created by the majority is that the agency must have a special competence over all or some part of the controversy. The court merely concludes that neither the Director of the Department of Licensing, the Real Estate Commission, nor the real estate division has the expertise to resolve antitrust issues. The majority apparently assumes that the only relevant expertise is that relating to the final conclusion of whether antitrust violations have occurred. This assumption frames the issue too broadly. It is obvious that the agency does not enforce the antitrust laws per se, but it does not there follow ipso facto, as the majority assumes, that the agency does not possess some useful expertise. The agency presumably could assess the reasonableness and need of the challenged conduct, thereby providing an antitrust court with some underlying facts upon which it could, after weighing other relevant considerations, determine if antitrust violations had occurred. The majority does not recognize that the agency could aid the court in this fashion, for it simply concludes that administrative expertise is not helpful unless it can by itself resolve the ultimate issue in the case. This point will be amplified later.

The third condition precedent proclaimed by the majority is that before application of the doctrine the case must involve issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme. Once more we have no reasoning or analysis of our statutes, but a mere conclusion that those engaged in real estate are not part of an industry with a pervasive scheme of agency regulations. In analyzing our state statutes I will demonstrate that this conclusion is erroneous.

In any event the majority in concocting its third rule for application of the doctrine, confuses two theories. It first requires a pervasive regulatory scheme. It justifies that requirement upon the premise that there must be a danger that judicial action would conflict with the regulatory scheme. The first point is not even applicable; the second is merely a guideline, one of many, to determine applicability of the doctrine.

The question of the pervasiveness of a regulatory scheme relates to the determination whether there exists an antitrust exemption, explicitly or implicitly. *See, e.g., Otter Tail Power Co. v. United States*, 410 U.S. 366, 35 L. Ed. 2d 359, 93 S. Ct. 1022 (1973). 1 P. Areeda & D. Turner, *Antitrust Law* § 223B (1978). It is not a relevant threshold factor.

On the other hand, application of the doctrine of primary jurisdiction may rest upon the desirability of obtaining uniformity and consistency in the regulation of business entrusted to a particular agency. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 48 L. Ed. 2d 643, 96 S. Ct. 1978 (1976). This point is not determinative; it only is to be taken into account in deciding whether to apply the rule.

Turning to the statute under which this action is brought, it specifically declares that:

> It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which

are reasonable in relation to the development and preservation of business or which are not injurious to the public interest . . .

RCW 19.86.920. Plainly, some entity, judicial or administrative, must determine whether the acts or practices alleged herein are reasonable in relation to the development and preservation of business or whether they are not injurious to the public interest. Once again the majority enjoys the comfort of a conclusion without the discomfort of analysis or rationale. It states that a court can more properly determine whether there have been violations of the Consumer Protection Act. There it ends the matter.

It is obvious that RCW 19.86.920 is designed to adopt the judicial "rule of reason" developed under the parallel federal acts. O'Connell, *Washington Consumer Protection Act—Enforcement Provisions and Policies,* 36 Wash. L. Rev. 279, 281 (1961).

In essence the majority would close its eyes to the existence of RCW 18.85. That error leads to its conclusion that the administrative agency has no business in this litigation. Bear in mind that we must ascertain whether the policies behind the doctrine of primary jurisdiction make it desirable that the agency make the initial decision so that the court ultimately has a more informed and precise determination of the scope and meaning of the statute as applied to the particular circumstances at hand. *Federal Maritime Bd. v. Isbrandtsen Co.,* 356 U.S. 481, 498, 2 L. Ed. 2d 926, 78 S. Ct. 851 (1958).

This inquiry necessitates an examination of RCW 18.85 which governs real estate brokers and salesmen. RCW 18.85.010 provides comprehensive definitions including a definition of real estate multiple listing association. RCW 18.85.010(8) defines such association as an association of real estate brokers who do certain things specified therein. The Director of Licensing, with the advice and approval of the commission, may issue rules and regulations to govern the activities of real estate brokers, consistent with the

chapter. The Director is to enforce all laws, rules and regulations relating to the licensing of real estate brokers, deny licenses, and suspend or revoke the license of violators. RCW 18.85.040.

A real estate commission is created, the members of which must have at least 5 years' experience in the sale, operation or management of real estate or have had at least 3 years' experience in investigative work of a similar nature. RCW 18.85.071.

In RCW 18.85.230, some 29 matters are set forth as grounds for denying, suspending or revoking a broker's or salesman's license. Significantly, and ignored by the majority, is subsection (9) of section .230 which prohibits the continuation of the sale of real estate or operation according to a plan of selling whereby the interests of the public are endangered, after the Director has stated objections thereto in writing.

Judicial review of a final decision by the Director is limited to the narrow grounds stated in RCW 34.04. *See* RCW 18.85.271.

A violation of any of the provisions of the chapter is a gross misdemeanor. RCW 18.85.340. Contrary to the assertion of the majority, the Director may seek an injunction against violation of any of the provisions of the chapter or any order or decision thereunder. The Director may also issue cease and desist orders. RCW 18.85.350 and .343.

Multiple listing associations are specifically covered by RCW 18.85.400. That section states that each multiple listing association *shall* submit to the real estate commission for approval or disapproval its entrance requirements. That section prohibits the real estate commission from approving any entrance requirements which are more restrictive than five specified matters. Subsection (5) allows a requirement that the applicant follow any of the rules of the association which apply to all the members of such association provided that such other rules do not violate federal or state law.

Thus we have a comprehensive scheme of regulation which applies to real estate brokers. A multiple listing association is defined as an association of real estate brokers who do certain acts. Clearly the brokers are regulated in their capacity as members of such multiple listing association. Under RCW 18.85.230(9), it is a violation to continue to sell any real estate or operate according to a plan of selling whereby the interests of the public are endangered.

The chapter imposes a criminal penalty. It authorizes the denial, suspension and revocation of licenses. It authorizes cease and desist orders and gives the Director power to enjoin violations.

Thus when we couple RCW 19.86.920 with RCW 18.85, it is apparent that there is a regulatory scheme which should be taken into account in construing RCW 19.86.920. Are the alleged acts or practices reasonable in relation to the development and preservation of business? Without a determination by the agency, the court will be at a loss to determine that question other than to focus upon the possibly narrow facts which the parties in a particular case may decide to place before the court. The possibility of inconsistency from court to court is great, whereas an agency determination could initially determine a regulatory policy which is critical under RCW 19.86.920. Are the acts injurious to the public interest? That question, mandated by RCW 19.86.920, is virtually identical to RCW 18.85-.230(9) which prohibits the operation of a real estate brokerage according to a plan of selling whereby the interests of the public are endangered.

The very allegations of the complaints provide the reasons for applying the primary jurisdiction doctrine. It alleges that the multiple listings prevent the sale of homes through brokers who are not members of the multiple listing service; that most homes sold in the applicable area are sold through listings in the multiple listing service; that membership is important to a broker's ability to engage in trade and commerce; that there are contracts, combinations

and conspiracies in restraint of trade and commerce; that there is a continuing agreement, understanding and concert of action to restrain competition; that they deny brokers who are not members of the Board of Realtors access to the MLS services; that the conduct constitutes contracts and the combination and conspiracy are an unreasonable restraint of trade and an unfair method of competition; that the effects of the violations have been to suppress and eliminate competition, to create artificial entry barriers into the trade and commerce, to deny consumers the benefits of free and open competition and to artificially increase the commissions paid by consumers.

The underlying principle was well stated by Justice Stone in *United States v. Morgan,* 307 U.S. 183, 191, 83 L. Ed. 1211, 59 S. Ct. 795 (1939):

> Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through coordinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim.

(Footnote omitted.)

This action is brought by the Attorney General. The Attorney General also serves as legal advisor to the involved agency, RCW 18.85.345. So far as the record before us reveals, none of the actions is predicated upon a complaint by any injured citizen.

I would defer judicial proceedings and apply the doctrine of primary jurisdiction thereby allowing the Director and the Attorney General to fulfill their obligations under the law. Given the complexity of the factual and legal issues, such administrative action should be of material assistance to the ultimate judicial resolution of these far–reaching challenges. Parenthetically, I note that there is a lack of unanimity in the reported decisions concerning the validity

of multiple listing services under state antitrust laws. Annot., *Validity, Construction, and Effect of Real–Estate Brokers' Multiple–Listing Agreement*, 45 A.L.R.3d § 190(3) (1972).

Given this disposition, I would not reach the other issues which would not be ripe for determination at this stage of the litigation.

STAFFORD and HICKS, JJ., concur with BRACHTENBACH, J.

Reconsideration denied March 19, 1981.