[No. 57364–6.   En Banc.   January 3, 1991.]

AMERICAN LEGION POST NO. 32, *Appellant,* v. THE CITY
OF WALLA WALLA, *Respondent.*

2

*Carter L. Fjeld* (of *Velikanje, Moore & Shore, P.S.*), for appellant.

*Reese, Baffney, Schrag, Siegel & Hedine, P.S.,* by *Thomas K. Baffney,* for respondent.

*Gerard L. Sandersen* on behalf of Washington State Association of Municipal Attorneys, amicus curiae for respondent.

GUY, J.—Respondent taxes gambling within the city of Walla Walla. Appellant was assessed penalties and interest for failure to pay delinquent gambling taxes. It challenges the past and continuous collection of these taxes, the penalties, and the interest as illegal and unconstitutional.

## FACTS

Since 1975, respondent City of Walla Walla has imposed a gambling tax pursuant to chapter 3.82 of the Walla Walla Municipal Code (WWMC). The authority for this tax is derived from the gambling act, RCW 9.46.

Appellant American Legion Post 32 (Legion) offers bingo, punchboards and pull tabs on its premises. It has

been taxed for these activities since 1982. Pursuant to RCW 9.46.110, bingo is taxed at a rate of 10 percent and punchboards and pull tabs at a rate of 5 percent. These taxes are computed on a quarterly basis. WWMC 3.82.030. Legion has been delinquent since the fourth quarter of 1985 and its debt for taxes, penalties and interest totals $49,726.77.

RCW 9.46.113 requires that gambling tax be used primarily for the enforcement of the gambling act. All gambling revenue is placed in Walla Walla's general fund. No line item in the budget is specifically dedicated to the enforcement of gambling. Walla Walla concedes there is no way to trace the actual expenditure of the gambling tax. However, it contends that the general police budget allows for such expenditure and the subsequent enforcement of the act. The total police budget for 1988 was $1,927,600. The gambling tax was approximately $51,000. These figures more or less represent the budget and taxes for the years 1985 through 1987.

Walla Walla appears to have a low incidence of gambling–related offenses, which it attributes to its general police presence in the community. In June 1981, police investigated a report of illegal gambling in connection with a golf tournament. Two other reports were investigated, one in 1983 at the Eagles Club, and one in 1984 at the V.F.W. Post. The V.F.W. incident was investigated principally by state officials.

In 1985, Walla Walla police responded to 619 calls for assistance at establishments serving alcohol. Of these establishments, 236 had licensed gambling facilities. In 1986, police responded to 485 calls at establishments serving alcohol, of which 109 had licensed gambling facilities. In 1987, police handled 556 calls for assistance at establishments serving alcohol, of which 203 had licensed gambling facilities.

All officers receive instruction in basic gambling investigative techniques while attending the State–run Police

Training Academy. Walla Walla pays for the officers' salaries while they attend. Officers also receive some ongoing gambling–related training. In September 1982, officers participated in approximately 28 hours of vice investigative training which included instruction on illegal gambling.

On February 12, 1988, Legion initiated an action against Walla Walla seeking, among other things, to have the gambling tax, penalties and interest declared illegal and unconstitutional. The trial court heard motions for summary judgment brought by both parties. The court denied Legion's motion and granted Walla Walla's motion, ruling that the gambling tax, penalties and interest were constitutional.

On July 11, 1990, the Court of Appeals certified the following question to this court:

> Whether this suit to enjoin the City of Walla Walla from imposing a gambling tax and to recover gambling taxes previously paid because allegedly the City is not using the monies collected "primarily" for enforcement of the Gambling Act pursuant to RCW 9.46.113, should first be referred to the Gambling Commission for its interpretation of the statute pursuant to the Doctrine of Primary Jurisdiction.

This court accepted certification. We answer the question in the negative and affirm the trial court on all issues.

ANALYSIS

Doctrine of Primary Jurisdiction

Both parties argue against applying the doctrine of primary jurisdiction to this case.

■ We agree. Interpretation of a statute is solely a question of law and within the conventional competence of the court. *State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 242, 662 P.2d 38 (1983). Where the only question is the interpretation of a statute, resort to the administrative agency is unnecessary since it has no special competence over the controversy. *Northshore,* at 242. This

conclusion reflects a well recognized exception to the doctrine of primary jurisdiction. *Northshore,* at 242 (citing *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 66 L. Ed. 943, 42 S. Ct. 477 (1922)).

■ At issue is interpretation of "primarily" as used in RCW 9.46.113. Neither party advocates attributing to the term something other than its usual and ordinary meaning. Such explication is within the competence of this court and does not require deference to a specialized administrative body. *Northshore,* at 242.

It should be noted that *Jaramillo v. Morris,* 50 Wn. App. 822, 750 P.2d 1301, *review denied,* 110 Wn.2d 1040 (1988) appears to contradict our holding in this case. However, *Jaramillo* is readily distinguishable and may be harmonized with Legion's case. In *Jaramillo,* we sanctioned the referral of the interpretation of the term "foot" as it was used in a medical statute to the Washington State Podiatry Board. In that case, a podiatrist had negligently performed surgery on the plaintiff's ankle. One of the issues to be resolved involved whether the podiatrist had exceeded the scope of his podiatry license by operating on an ankle. RCW 18.22.010, which authorizes the practice of podiatry, limits the practice to the human foot.

In medical parlance, the ankle joint is considered a functional component of the foot. Thus, treating ailments of the foot might necessarily require surgery on the ankle joint. Because this entailed attributing a special medical interpretation to "foot", the case was properly referred to the expertise of the Podiatry Board. By contrast, neither party in this case advocates ascribing something other than the usual and ordinary meaning to "primarily."

## Constitutionality of Tax

Legion argues that Walla Walla is not utilizing the gambling tax primarily for the enforcement of the gambling act

as required by RCW 9.46.113.[1] Tax not used for that purpose allegedly constitutes additional tax, which Legion contends exceeds the statutory authority of RCW 9.46.113 and renders the gambling tax illegal and unconstitutional.

▮▮ We disagree. There is no authority, nor does Legion provide any, that renders an otherwise constitutionally levied tax unconstitutional merely because it is purportedly utilized for a purpose other than what is required. In the absence of argument and citation to authority, an issue raised on appeal will not be considered. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 29, 593 P.2d 156 (1979). Legion concedes the constitutionality of RCW 9.46.113, which authorizes the tax, and RCW 9.46-.110,[2] which determines the maximum tax that may be imposed. It advances no argument that Walla Walla's tax exceeds the statutorily authorized percentage. We fail to see where Legion has raised a cognizable constitutional issue. We find its argument encompasses nothing more than a challenge to Walla Walla's allocation of the gambling tax.

▮ The mere fact that a taxpayer disagrees with a discretionary decision of the city provides no basis for a suit challenging that decision. *In re Bellingham*, 52 Wn.2d 497, 499, 326 P.2d 741 (1958). In order to maintain an action, the taxpayer must show that he or she has a unique right or interest that is being violated, in a manner special and different from the rights of other taxpayers. *Cf. Calvary Bible Presbyterian Church v. Board of Regents of UW*, 72 Wn.2d

---

[1]RCW 9.46.113 provides: "Any county, city or town which collects a tax on gambling activities authorized pursuant to RCW 9.46.110 shall use the revenue from such tax primarily for the purpose of enforcement of the provisions of this chapter by the county, city or town law enforcement agency."

[2]RCW 9.46.110 provides in pertinent part: "The legislative authority of any county, city–county, city, or town, by local law and ordinance, and in accordance with the provisions of this chapter and rules and regulations promulgated hereunder, may provide for the taxing of any gambling activity authorized by this chapter within its jurisdiction, the tax receipts to go to the county, city–county, city, or town so taxing the same: . . . . [T]axation of bingo . . . shall never be in an amount greater than ten percent of the gross revenue received . . . .. Taxation of punch boards and pull–tabs shall not exceed five percent of gross receipts".

912, 916–17, 436 P.2d 189 (1967) (challenge to the constitutionality of a statute), *cert. denied,* 393 U.S. 960 (1968). Without showing that the action complained of interferes with such legal rights or privileges, there is no standing to challenge the action. *Cf. Bolser v. Washington State Liquor Control Bd.,* 90 Wn.2d 223, 226, 580 P.2d 629 (1978) (challenging the validity of a Liquor Control Board regulation).

Legion provides no argument demonstrating it has a unique legal right or privilege different from other taxpayers that was violated by Walla Walla's levy and subsequent use of the gambling tax. Therefore, we hold it has no standing to challenge either the constitutionality or the allocation of the tax.

Because there is an apparent ambiguity that surrounds the meaning of "primarily", we are compelled to provide an interpretation for future reference. For the same reason, we choose to define "enforcement" as well.

■ In construing statutes, the primary objective is to carry out the intent of the Legislature. *In re Estate of Little,* 106 Wn.2d 269, 283, 721 P.2d 950 (1986). In so doing, legislative definitions provided in the statutes generally control. *Seattle v. Shepherd,* 93 Wn.2d 861, 866, 613 P.2d 1158 (1980). In the absence of a legislative definition, courts may resort to the applicable dictionary definition to determine a word's plain and ordinary meaning unless a contrary intent within the statute appears. *Northshore,* at 244 (citing *Intermediate Sch. Dist. 105 v. Yakima Cy.,* 81 Wn.2d 443, 445, 503 P.2d 104 (1972)); *see also In re Estate of Little,* at 283.

No statutory definition of "primarily" exists in the gambling act; therefore, we resort to the dictionary. The *Random House Dictionary* defines "primarily" as "essentially; mostly; chiefly; principally . . . in the first instance; at first; originally". *Random House Dictionary* 1537 (2d ed. 1987). *Webster's* defines "primarily" as "first of all . . . in the first place". *Webster's Third New International Dictionary* 1800 (1986).

Relying on these definitions, Attorney General Opinion 10 provides that "[b]ased on the usual and ordinary meaning of 'primarily,' RCW 9.46.113 requires that revenue from the gambling tax be used chiefly and for the most part to enforce the state's gambling laws. The term 'primarily' does not require that all revenue be devoted to this purpose." AGO 10 (1986). Where the Legislature used "primarily" as opposed to "exclusively", a municipality would not be in violation of RCW 9.46.113 if a small portion of the gambling revenues were used for other law enforcement activities. AGO 21 (1976).

An Attorney General opinion is entitled to considerable weight; however, it is not controlling. *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 828, 748 P.2d 1112 (1988); *Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 606, 638 P.2d 77 (1981). We agree with the Attorney General to the extent that "primarily" means "in the first instance". Thus, regardless of amount, the tax must be utilized first of all to enforce the gambling act. If this requires all of the revenue, then it must be utilized. Similarly, if only 5 percent is needed, then that is all that must be used.

We find no support for the position that "primarily" means "for the most part" or "substantially". To attribute such interpretation to the term defies logic. Municipalities would be required to allocate at least 51 percent of the gambling tax to enforce the gambling act even if a lesser amount would suffice. In short, we would be attributing to the Legislature an intent that municipalities spend money even though it was not needed. Statutes must be interpreted to effect their purpose and avoid absurd results. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

Moreover, we note that the Supreme Court has similarly interpreted "primarily" to mean "of first importance" or "principally" rather than substantially. *Malat v. Riddell*, 383 U.S. 569, 571–72, 16 L. Ed. 2d 102, 86 S. Ct. 1030 (1966).

Legion advocates measuring "enforcement" as used in RCW 9.46.113 by the number of gambling violations reported and investigated, as well as actual police training devoted specifically to gambling. We find this position untenable and unsupported by argument or citation to authority.

There is no statutory definition of enforcement; therefore, we again look to the dictionary. *Random House* defines "enforcement" as "the act or process of enforcing". Similarly, "enforce" is defined as "to put or keep in force; compel obedience to". *Random House Dictionary* 644 (2d ed. 1987). *Webster's* defines "enforcement" as "the act of enforcing", while "enforce" is defined as "to give force to". *Webster's Third New International Dictionary* 751 (1986).

RCW 9.46.010 essentially provides that enforcement of the gambling act pertains to the regulation and enforcement of all factors incident to the activities authorized in the act. Based upon this legislative declaration of intent and the applicable dictionary definitions, we hold that "enforcement" as used in RCW 9.46.113 entails the regulation of and compelling compliance with all requirements specified under the gambling act. This envelops much more than that advocated by Legion. Further, Legion offers no evidence that shows Walla Walla has not been enforcing the act as mandated. We find that the relatively low rate of gambling–related offenses indicates otherwise.

Enforcement does not necessarily encompass only that police activity which can be specifically related to gambling, as Legion contends. Among other things, it would be ludicrous to suggest that general police presence in the community does not have an inhibitive effect on those who contemplate engaging in illegal gambling. Police do not exist merely to deal with existent crime; they also act as a deterrent to the establishment of crime.

In reviewing an order of summary judgment, the reviewing court engages in the same inquiry as the trial court. *Sarruf v. Miller,* 90 Wn.2d 880, 883, 586 P.2d 466 (1978) (citing *Highline Sch. Dist. 401 v. Port of Seattle,* 87

Wn.2d 6, 15, 548 P.2d 1085 (1976)). The reviewing court determines whether there is a genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law. *Sarruf,* at 883.

Based upon our review of the record, we find that the trial court correctly determined there were no genuine issues as to any material facts. There is no contention by Legion that the gambling revenues have been spent for other than enforcement of the gambling act; nor is there evidence in the record to support such a conclusion. We further find that although the gambling dollars are not readily traceable, the tax is placed in the general police budget and contributes to the ongoing existence and functioning of the police force. While police conduct in general is not always specifically dedicated to preventing gambling–related offenses, it is indisputable that the general presence and continuous activity of the police within the community impacts and helps to deter illegal gambling.

### Penalties and Interest

Legion argues that Walla Walla has no authority to assess penalties and interest for delinquent gambling taxes. Therefore, it maintains that such penalties and interest are unconstitutional.

We disagree. The gambling act expressly provides:

> Any . . . city, town, city–county, or county may . . . enact only such local law as is consistent with the powers and duties expressly granted to and imposed upon it by chapter 9.46 RCW and which is not in conflict with that chapter or with the rules of the commission.

RCW 9.46.285.

Pursuant to this authority, Walla Walla enacted municipal ordinance 3.82.060 which prescribes the penalty and interest assessed to delinquent taxes. This would be consistent with the purpose of the chapter. It cannot seriously be contended that the Legislature intended to provide municipalities with the authority to impose a tax but deprive them of the power to enforce the tax. We will not ascribe such an absurd interpretation to the gambling act. *See*

*Neher,* 112 Wn.2d at 351 (statutes must be interpreted to effect their purpose and avoid absurd results).

RCW 9.46.350 provides that a county, city or town imposing a tax under RCW 9.46.110 may bring an action on its own behalf to collect fees, interest, penalties or taxes which are imposed pursuant to the gambling act or rules that have been adopted in accordance with the act. By commonsense inference, the authority to collect such penalties and interest necessarily presupposes the initial authority to assess such penalties and interest. We find no merit to Legion's argument.

## 42 U.S.C. § 1983

Legion argues that the gambling tax imposed by Walla Walla is unconstitutional and as such constitutes a deprivation of its rights, privileges and immunities under 42 U.S.C. § 1983 (1983).

There are two prerequisites to maintaining a § 1983 action: (1) the plaintiff must prove that the defendant deprived him of his rights secured by either the constitution or the laws of the United States; and (2) the plaintiff must prove that the defendant acted under color of state law. *Loewen v. Turnipseed,* 488 F. Supp. 1138, 1151 (N.D. Miss. 1980) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)).

Legion's argument fails in two ways. First, it has not established that there is a constitutional right at issue. Second, although it initially implicated the Fourteenth Amendment in its complaint, on appeal it has grounded its argument in the Washington State Constitution, thereby failing to meet the first prong of the test. Consequently, we hold there is no basis for considering its challenge under § 1983.

## CONCLUSION

The Legislature has provided municipalities with the authority to establish and implement a scheme of taxation on gambling. Absent some demonstration of unconstitutionality, taxpayers such as Legion have no standing to

challenge how municipalities allocate such funds. Legion's remedy in this instance is political, not legal. There is no constitutional issue in this case. The judgment of the trial court is affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.