[No. 58665-9.   En Banc.   October 1, 1992.]

DIOXIN/ORGANOCHLORINE CENTER, ET AL, *Appellants*, v. THE DEPARTMENT OF ECOLOGY, *Respondent*, NORTHWEST PULP AND PAPER ASSOCIATION, *Intervenor*.

762

*Victor M. Sher, Todd D. True,* and *Rebecca E. Todd* (of *Sierra Club Legal Defense Fund, Inc.*), for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Ronald L. Lavigne, Assistant,* for respondent.

*Stoel Rives Boley Jones & Grey,* by *Donald B. Myers* and *James M. Grijalva,* for intervenor.

*Kenneth O. Eikenberry, Attorney General,* and *Robert V. Jensen, Assistant,* on behalf of the Pollution Control Hearings Board, amicus curiae for respondent.

SMITH, J. — This is an appeal of a Thurston County Superior Court order granting the cross motion of Respondents Washington State Department of Ecology, et al. to dismiss with prejudice the action by Appellants Dioxin/ Organochlorine Center, et al. which sought a declaratory judgment that respondents' national pollutant discharge elimination system permit process, as applied to certain permit applicants, violates the State Environmental Policy Act of 1971. Appellants also appeal the court's order allowing the Northwest Pulp and Paper Association to intervene in the declaratory judgment action. We granted direct review pursuant to RAP 4.2(a)(4) and RAP 4.2(a)(5). We affirm the Superior Court.

## QUESTIONS

Two principal questions are presented by this case: (1) whether the Superior Court for Thurston County has jurisdiction to adjudicate claims against the Washington State Department of Ecology and the Director of that department without prior resort to administrative hearing procedures and exhaustion of administrative remedies; and (2) whether

intervention of right was properly granted in this case to the Northwest Pulp and Paper Association under CR 24(a).

## FACTS

Appellants Dioxin/Organochlorine Center, Columbia River United, Inc., and Puget Sound Alliance (Appellants) characterize themselves as nonprofit organizations working to protect the environment.[1] On August 2, 1991, Appellants filed a complaint in the Thurston County Superior Court seeking a declaratory judgment that the Washington State Department of Ecology (Ecology), Director of Ecology Christine O. Gregoire, and the State of Washington failed to comply with the procedural and substantive requirements of the State Environmental Policy Act of 1971 (SEPA) in issuing National Pollutant Discharge Elimination System (NPDES) permits to pulp and paper mills discharging toxic organochlorines into the surface waters of Washington.[2] Appellants contended in their complaint that respondents violated RCW 43.21C.020(2),[3] RCW 43.21C.031,[4] and RCW 43.21C.110,[5]

---

[1]See generally Clerk's Papers, at 32-33. Complaint for Declaratory and Injunctive Relief and Petition for Review, Thurston County Superior Court cause 91-2-01838-1 (Aug. 2, 1991).

[2]Clerk's Papers, at 31-32.

[3]RCW 43.21C.020 declares legislative recognition of the need for preserving the environment and mandates efforts to restore and maintain environmental quality. Subsection (2) states:

"In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the state of Washington and all agencies of the state to use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state and its citizens may:

"(a) Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

"(b) Assure for all people of Washington safe, healthful, productive, and esthetically and culturally pleasing surroundings;

"(c) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

"(d) Preserve important historic, cultural, and natural aspects of our national heritage;

and the regulations implementing those statutes, by issuing certain NPDES permits without requiring applicants for those permits to file environmental impact statements (EIS).[6] Appellants' complaint also contained a request for issuance of "a temporary restraining order, preliminary injunction, and injunction compelling Ecology to fulfill its duties under SEPA. . . ."[7] At about the same time as they

"(e) Maintain, wherever possible, an environment which supports diversity and variety of individual choice;

"(f) Achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

"(g) Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources."

[4]RCW 43.21C.031 provides:

"**Significant impacts.** An environmental impact statement (the detailed statement required by RCW 43.21C.030(2)(c)) shall be prepared on proposals for legislation and other major actions having a probable significant, adverse environmental impact. Actions categorically exempt under RCW 43.21C.110(1)(a) do not require environmental review or the preparation of an environmental impact statement under this chapter.

"An environmental impact statement is required to analyze only those probable adverse environmental impacts which are significant. Beneficial environmental impacts may be discussed. The responsible official shall consult with agencies and the public to identify such impacts and limit the scope of an environmental impact statement. . . ."

[5]RCW 43.21C.110(1) authorizes the Department of Ecology to adopt and amend rules of interpretation and implementation of SEPA. However, with respect to Ecology's authority to categorically exempt certain activities from SEPA's environmental impact statement requirement, subpart (a) of subsection (1) provides in part that "[t]he types of actions included as *categorical exemptions* in the rules shall be *limited to those types which are not major actions significantly affecting the quality of the environment.* The rules shall provide for certain circumstances where actions which potentially are categorically exempt require environmental review." (Italics ours.)

[6]Clerk's Papers, at 31-41. Appellants contest issuance of the following NPDES permits by the Department of Ecology: Boise Cascade, Wallula (May 10, 1991); James River, Camas (May 10, 1991); Longview Fibre, Longview (May 10, 1991); Weyerhaeuser, Cosmopolis, Everett, and Longview (May 10, 1991); Georgia-Pacific, Bellingham (May 15, 1991); Scott Paper, Everett (May 15, 1991); ITT Rayonier, Hoquiam (June 4, 1991); Simpson Tacoma Kraft, Tacoma (June 25, 1991); and ITT Rayonier, Port Angeles (July 3, 1991).

[7]Clerk's Papers, at 41.

commenced this action, Appellants also filed a notice of appeal with the Pollution Control Hearings Board (PCHB) concerning certain NPDES permit proceedings as a "protective measure."[8] However, Appellants then filed a motion to stay the administrative proceedings before the PCHB pending outcome of their superior court action.[9] Appellants contend that the issues in this case arise under the State Environmental Policy Act of 1971 (RCW 43.21C.010 *et seq.*) and that, accordingly, RCW 43.21C.075 and RCW 34.05.514 give the superior court jurisdiction to decide those issues.[10]

RCW 43.21C.075(1) states that SEPA "provides a basis for challenging whether governmental action is in compliance with the substantive and procedural provisions of" that act.[11] RCW 34.05.514(1) indicates where petitions for review under the Administrative Procedure Act (RCW 34.05) must be filed. That section provides, in part, that "[e]xcept as provided in subsection (2) of this section . . . proceedings for review under this chapter shall be instituted by filing a petition in the superior court . . .". Subsection (2) relates to proceedings involving institutions of higher education.

In opposition to Appellants' complaint and motion for stay of administrative proceedings, Respondents State of Wash-

---

[8]Opening Brief of Appellants, at 17. The Pollution Control Hearings Board brief amicus curiae describes the Board as the exclusive adjudicator of Department of Ecology waste water permit decisions. See Brief of Amicus Curiae Washington State Pollution Control Hearings Board, at 1.

[9]Clerk's Papers, at 20. Plaintiffs' Motion To Stay Administrative Proceedings dated September 16, 1991.

[10]Clerk's Papers, at 32. Complaint for Declaratory and Injunctive Relief and Petition for Review, Thurston County Superior Court cause 91-2-01838-1 (Aug. 2, 1991).

[11]Appellants apparently contend that RCW 43.21C.075(1) permits them to challenge Ecology's actions in superior court because, in Appellants' view, Ecology's actions constitute "government actions". However, they overlook subsection (4) which states that "[i]f a person aggrieved by an agency action has the right to judicial appeal and if an agency has an appeal procedure, such person shall, prior to seeking any judicial review, use such procedure if any such procedure is available, unless expressly provided otherwise by state statute."

ington, Christine O. Gregoire, and Department of Ecology (Respondents) filed a cross motion to dismiss, alleging, among other things, that the superior court lacked jurisdiction over the action because the case involves factual issues which, under RCW 43.21B.110, fall within the primary jurisdiction of the PCHB.[12] Additionally, Respondents argued in their motion that dismissal was appropriate because Appellants failed to exhaust their administrative remedies as required by RCW 34.05.534.[13] Before the trial judge ruled on either of the motions, the Northwest Pulp and Paper Association (NWPPA) filed a motion to intervene pursuant to CR 24(a) and CR 24(b).[14] NWPPA filed a memorandum and

---

[12]Clerk's Papers, at 18-19. Defendants' Cross-Motion To Dismiss (Sept. 25, 1991). Defendants moved to dismiss under CR 12(b)(1), alleging that the trial court lacked subject matter jurisdiction and under CR 12(b)(7), alleging that Appellants failed to join indispensable parties. However, the trial court's order granting defendants' motion to dismiss did not identify the specific grounds on which the decision was based. Clerk's Papers, at 9-10. Nor is that portion of the hearing contained in the verbatim report of proceedings. Report of Proceedings, at 1-89.

[13]Clerk's Papers, at 18.

[14]Clerk's Papers, at 16. Motion of the Northwest Pulp and Paper Association To Intervene Pursuant to Civil Rule of Superior Court 24 (Sept. 25, 1991). CR 24 provides:

"(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and [the applicant] is so situated that the disposition of the action may as a practical matter impair or impede . . . ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"(b) **Permissive Intervention.** Upon timely application, anyone may be permitted to intervene in an action:

"(1) When a statute confers a conditional right to intervene; or

"(2) When an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirements, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

affidavit in support of its motion.[15] NWPPA asserts that it is a "non-profit trade association incorporated in 1957 to represent the common interests of the pulp, paper, and pulping chemical industries in the states of Washington, Oregon, Idaho, and Alaska."[16] NWPPA contends that its members have legally protected interests in the subject matter of this action and that their ability to protect those interests would be impaired if it is not allowed to intervene.[17]

On October 3, 1991, after oral argument, the Honorable Paula Casey, Thurston County Superior Court, granted Respondents' motion to dismiss with prejudice.[18] NWPPA's motion for intervention was granted pursuant to CR 24(a).[19] Like Respondents, NWPPA contends that dismissal was appropriate because primary jurisdiction over Appellants' claims rests with the PCHB, and because Appellants failed to exhaust their administrative remedies before resorting to action in superior court.[20]

---

[15]See Clerk's Papers, at 44-57. Memorandum in Support of Northwest Pulp and Paper Association's Motion To Intervene (Sept. 25, 1991); see also Clerk's Papers, at 58-65. Affidavit of Llewellyn Matthews in Support of The Northwest Pulp and Paper Association to Intervene Pursuant to Civil Rule 24 (Sept. 24, 1991). Mr. Matthews is executive director of the Association.

[16]Clerk's Papers, at 59. NWPPA's members are Boise Cascade/Paper Group; Daishowa America Company, Ltd.; Georgia-Pacific Corporation; Inland Empire Paper Company; ITT Rayonier, Inc.; James River Corporation; Longview Fibre Company; Occidental Chemical Corporation; Port Townsend Paper Corporation; Scott Paper Company; Simpson Tacoma Kraft Company; Sonoco Products; and the Weyerhaeuser Company.

[17]Clerk's Papers, at 50, 52. Memorandum in Support of Northwest Pulp and Paper Association's Motion To Intervene (Sept. 25, 1991).

[18]Clerk's Papers, at 9-10. Order Granting Defendants' Cross Motion To Dismiss (Oct. 3, 1991).

[19]Clerk's Papers, at 7-8. Order Granting Motion for Intervention of Northwest Pulp and Paper Association (Oct. 9, 1991). This order was not signed until after the case was dismissed. However, counsel advised this court in argument that Judge Casey actually made her ruling prior to the dismissal.

[20]Clerk's Papers, at 15. Answer of Intervenor-Defendant Northwest Pulp and Paper Association (Sept. 25, 1991).

On November 1, 1991, Appellants filed a notice of appeal in Thurston County Superior Court asking this court to review the trial court's order granting Respondents' motion to dismiss and the order granting NWPPA's motion to intervene.[21] A statement of grounds for direct review was filed with this court, pursuant to RAP 4.2(a)(4) and RAP 4.2(a)(5), on November 18, 1992.[22] In addition, Appellants filed before this court a supporting affidavit of Dr. Ellen K. Silbergeld, Ph.D., outlining the environmental and health risks posed by the toxic chemical dioxin.[23] Appellants asked this court to consider the Silbergeld affidavit in its decision whether to grant direct review.[24] Arguing that the affidavit was not part of the trial court record and, accordingly, should not be considered in deciding whether to accept review, NWPPA filed a motion to strike the Silbergeld affidavit.[25]

On November 22, 1991, the clerk of this court notified the parties that this case was a proper subject for a notice of appeal.[26] On February 6, 1992, our commissioner issued a ruling denying NWPPA's motion to strike,[27] indicating that submission of the Silbergeld affidavit for the limited pur-

---

[21]Clerk's Papers, at 4-5. Notice of Appeal to the Supreme Court (Nov. 1, 1991).

[22]Statement of Grounds for Direct Review (Nov. 18, 1991), at 19.

[23]Affidavit of Ellen K. Silbergeld, Ph.D., at 2, attached to Statement of Grounds for Direct Review. This affidavit was not before the trial court, although Appellants did submit at that stage extensive affidavits of John W. Lee, Jr. (Clerk's Papers, at 204-47), George L. Carlo, Ph.D. (Clerk's Papers, at 248-89), and Russell E. Keenan, Ph.D. (Clerk's Papers, at 290-318).

[24]Affidavit of Ellen K. Silbergeld, Ph.D.

[25]Response to Petitioners' Statement of Grounds for Direct Review and Motion To Strike the Affidavit of Dr. Ellen K. Silbergeld and Exhibits Thereto (Dec. 6, 1991), at 5.

[26]See Letter from Supreme Court Deputy Clerk Ronald R. Carpenter to the parties (Nov. 22, 1991), at 1.

[27]Commissioner's Ruling Denying Motion To Strike (Feb. 6, 1992).

pose of helping this court decide whether to accept direct review was not improper.[28]

The Pollution Control Hearings Board (PCHB) was granted permission to file a brief amicus curiae in this case.[29] The PCHB concurs with the Respondents' contentions[30] and asserts that "priority of action" rules justify dismissal of Appellants' superior court action.[31]

DISCUSSION

Exhaustion of Administrative Remedies

The first matter to be considered is not whether Appellants are entitled to file a claim against Respondents for alleged violations of SEPA, but rather the forum for filing such a claim. The answer depends on the nature of Appellants' claim.

RCW 34.05.570(2)(b) states that "[t]he validity of any rule may be determined upon petition for a declaratory judgment addressed to the superior court of Thurston county. . . .". Thus, if Appellants sought declaratory judgment that Respondents exceeded their statutory authority *in promulgating certain rules* and that, consequently, those rules were invalid, then RCW 34.05.570(2)(b) would permit the claim to be brought in the Thurston County Superior Court.[32] However, Appellants' claim challenges not a rule itself, but application of a rule in the issuance of specific permits. Primary jurisdiction does not then lie in the superior court.

---

[28]See Commissioner's Ruling Denying Motion To Strike (Feb. 6, 1992).

[29]See Letter from Supreme Court Commissioner to Robert V. Jensen, Assistant Attorney General (Apr. 28, 1992).

[30]See Brief of Amicus Curiae Washington State Pollution Control Hearings Board, at 2-21.

[31]Brief of Amicus Curiae Washington State Pollution Control Hearings Board, at 22.

[32]*See generally American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 5, 802 P.2d 784 (1991) ("Interpretation of a statute is solely a question of law and within the conventional competence of the court. . . .") (citing *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 242, 662 P.2d 38 (1983)).

RCW 43.21B.110(1)(c) provides, in part, that "The hearings board [PCHB] shall . . . have jurisdiction to hear and decide appeals from the following . . . (c) [t]he issuance, modification, or termination of any permit . . .". Thus, because Appellants are challenging specific permits, as Respondents contend, jurisdiction for such appeals lies with the PCHB under RCW 43.21B.110(1)(c).[33] Appeal to the PCHB is the exclusive means for challenging issuance of permits.[34] Deciding which forum has jurisdiction over Appellants' action, then, turns on whether their complaint challenged Ecology's rule concerning categorical exemptions to SEPA's EIS requirement (WAC 197-11-855),[35] or whether Appellants merely challenged the application of that rule to certain NPDES permit applications.

■ Because this court is a reviewing court, it only considers on appeal evidence which was admitted in the trial court.[36] Thus, in deciding the nature of Appellants' challenge, this court limits its examination to evidence before the trial court.

■ Appellants contend that they are appealing the legality of Ecology's categorical exemption rule,[37] asking whether

---

[33]*See generally Asarco, Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 694, 601 P.2d 501 (1979) ("RCW 43.21B.120 gives the PCHB jurisdiction to hear and decide appeals pertaining to violations of any rule or regulation made by DOE . . ."). While RCW 43.21B.120 no longer exists, its effect was to prohibit the Department of Ecology (DOE) from hearing appeals on alleged violations of its own rules. Because the combined effect of RCW 43.21B.110(1) and RCW 43.21B.310(1) appears similar to that of former RCW 43.21B.120, *Asarco* at least has some comparative value in this case.

[34]RCW 43.21B.310(1) provides in part: "Any order issued by the department . . . or any permit . . . may be appealed to the pollution control hearings board . . .. Except as provided under chapter 70.105D RCW, this is the exclusive means of appeal . . .".

[35]WAC 197-11-855 exempts certain activities from SEPA's EIS requirement. Subsection (1) of WAC 197-11-855 exempts "[t]he issuance, reissuance or modification of any waste discharge permit that contains conditions no less stringent than federal effluent limitations and state rules and regulations. . . ."

[36]*See Casco Co. v. PUD 1*, 37 Wn.2d 777, 784-85, 226 P.2d 235 (1951).

[37]WAC 197-11-855.

Ecology's categorical exemption rule violates SEPA by allowing major actions to escape SEPA's EIS requirement. Appellants contend that such legal challenges are within the jurisdiction of the superior court. Where the only question in a case is the interpretation of a statute, claimants need not resort to the administrative agency because the agency has no special competence over the controversy.[38] This is a well-recognized exception to the doctrine of primary jurisdiction.[39] However, the exception implicitly requires an initial determination that only legal issues are in dispute.[40] Whether Appellants have satisfied this requirement is not clear on the record before this court. Appellants' brief in this court clearly challenges the legality of WAC 197-11-855 (the regulation categorically exempting certain actions from SEPA's EIS requirement), but their trial brief presents mixed questions of law and fact. Appellants' argument in their trial brief may be summarized as follows:

1. RCW 90.48.260 gives Ecology authority to issue NPDES permits subject to certain restrictions.[41]

2. Generally, activities having a probable significant adverse environmental impact must file an environmen-

---

[38]*American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 5, 802 P.2d 784 (1991) (citing *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 242, 662 P.2d 38 (1983)).

[39]*American Legion*, at 5-6; *Northshore*, at 242.

[40]Resort to an administrative agency is unnecessary where "the only question is interpretation of [a] statute . . .". *Northshore*, at 242.

[41]RCW 90.48.260 provides, in part:
"The department of ecology is hereby designated as the State Water Pollution Control Agency for all purposes of the federal clean water act as it exists on February 4, 1987, and is hereby authorized to participate fully in the programs of the act as well as to take all action necessary to secure to the state the benefits and to meet the requirements of that act. . . . The powers granted herein include, among others, . . . the following:
"(1) Complete authority to establish and administer a comprehensive state point source waste discharge or pollution discharge elimination permit program . . . Program elements authorized herein may include, but are not limited to: (a) Effluent treatment and limitation requirements . . .".

tal impact statement (EIS) before a permit may issue. RCW 43.21C.031.

3. Ecology has authority to categorically exempt certain actions from the EIS requirement, but *major actions* do not qualify for such exemptions. RCW 43.21C.110.

4. The activities of the pulp and paper mills referred to in this case constitute major actions.

5. Hence, because the permits were issued to mills engaging in major actions without compliance with the EIS requirement of RCW 43.21C.031, those permits are invalid, and the regulation exempting them from the EIS requirement is also invalid because, as applied, it exceeds Ecology's delegated authority.

The entire claim of Appellants is premised on their conclusion that the mills in question are engaging in activities constituting "major action". However, no evidence was presented in the trial court to establish that conclusion.[42] Ecology specifically denies Appellants' conclusion,[43] thus raising a factual issue.[44]

■ Appellants contend that establishing a legal definition of the term "major action" is a prerequisite to determining whether the activities of a particular mill come under that definition. However, because no evidence supporting this argument was presented before the trial court, this court need not resolve the issue.[45] At any rate, the argument is

---

[42]The affidavit of Dr. Ellen K. Silbergeld, Ph.D., was presented for a limited purpose before this court and does not constitute evidence on the appeal. See footnote 23.

[43]Clerk's Papers, at 26. Answer of Defendants State of Washington, Christine O. Gregoire, and Department of Ecology.

[44]*American Legion* is distinguishable from this case. The only jurisdictional question in *American Legion* was how the word "primarily" was to be interpreted within the meaning of RCW 9.46.113, and neither party asserted that the term should be given anything other than its usual and ordinary meaning. Thus, no factual issue was involved.

[45]*See generally Casco Co. v. PUD 1*, 37 Wn.2d 777, 784-85, 226 P.2d 235 (1951). ("This court is a reviewing court, and, on appeal, considers only such evidence as was admitted in the trial court. . . .").

logically flawed. One need not define the entire universe of activities which might constitute major actions before deciding whether a particular activity constitutes a "major action".

■ Because Appellants' legal challenge is premised on their conclusion that NPDES permits were wrongly issued under WAC 197-11-855 to paper and pulp mills whose activities constitute major actions without compliance with EIS requirements, jurisdiction over such challenges lies with the PCHB pursuant to RCW 43.21B.310(1).[46] Permits may be appealed to the PCHB under that section, and, except as provided under RCW 70.105D,[47] resort to the PCHB is the exclusive means of appealing such permits.[48]

---

[46]Former RCW 43.21B.310(1) provides in part:
"Any order issued by the department or authority. . . or any permit . . . issued by the department may be appealed to the pollution control hearings board . . . within thirty days after receipt of the order. Except as provided under chapter 70.105D RCW, this is the exclusive means of appeal of such an order."

[47]RCW 70.105D is the Model Toxics Control Act. RCW 70.105D.030(1) states that:
    The department [of ecology] may exercise the following powers in addition to any other powers granted by law:
    (a) Investigate, provide for investigating, or require potentially liable persons to investigate any releases or threatened releases of hazardous substances . . .
    (b) Conduct, provide for conducting, or require potentially liable persons to conduct remedial actions . . . to remedy releases or threatened releases of hazardous substances. . . .
Use of the word "may" in subsection (1) suggests that the exercise of such authority is permissive, not mandatory. However, subsection (2), using the command word "shall", states that:
    The department *shall* immediately implement all provisions of this chapter to the maximum extent practicable, including investigative and remedial actions where appropriate. . . .
(Italics ours.) RCW 70.105D.050(5)(a) states that "[a]ny person may commence a civil action to compel the department to perform any nondiscretionary duty under this chapter . . .", and subpart (b) states that "[c]ivil actions under this section . . . may be brought in the superior court of Thurston county or of the county in which the release or threatened release exists."

[48]*See generally* RCW 43.21B.310(1). *See* Rodgers, *The Washington Environmental Policy Act*, 60 Wash. L. Rev. 33, 35-40 (1984) (activities constituting "major action" under SEPA).

■ Respondents contend that the doctrine of primary jurisdiction also requires Appellants to bring their appeal before the PCHB before seeking relief in the superior court.[49] That doctrine "applies where a claim is originally cognizable in the courts, and *comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body*; in such a case the *judicial process is suspended* pending referral of such issues to the administrative body for its views."[50]

Perhaps a more concise reference to "primary jurisdiction" is that stated in the dissent in *Multiple Listing Service*[51] that:

> The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court.

RCW 43.21B.110(1) provides, in part, that "The hearings board shall . . . have jurisdiction to hear and decide appeals from . . . (c) [t]he issuance, modification, or termination of any permit . . .". This language gives the PCHB authority to hear Appellants' appeal, at least to the extent that the appeal challenges the issuance of specific permits.[52] Members of PCHB are required under RCW 43.21B.020 to be "qualified

[49]Brief of Respondents, at 15.

[50]*See In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 297, 302-03, 622 P.2d 1185 (1980) (quoting *Schmidt v. Old Union Stockyards Co.*, 58 Wn.2d 478, 484, 364 P.2d 23 (1961) (citing *United States v. Western Pac. R.R.*, 352 U.S. 59, 1 L. Ed. 2d 126, 77 S. Ct. 161 (1956))).

[51]*State v. Tacoma-Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 288, 622 P.2d 1190 (1980) (Brachtenbach, J., dissenting) (quoting 3 K. Davis, *Administrative Law* § 19.01, at 3 (1958)).

[52]*See State ex rel. Martin Marietta Aluminum, Inc. v. Woodward*, 84 Wn.2d 329, 332, 525 P.2d 247 (1974) ("RCW 43.21B.110 . . . gives jurisdiction to the PCHB over decisions of the Department of Ecology . . .").

by experience or training in pertinent matters pertaining to the environment . . .". Additionally, PCHB members acquire additional expertise in performing their statutory duties.[53] Appellants do not dispute that resolving environmental issues under SEPA involves an extensive regulatory framework. Because Respondents satisfy the test for primary jurisdiction, the trial court was correct in relegating the matter to the PCHB by dismissing Appellants' claim.

Having concluded that primary jurisdiction over this case lies with the PCHB, we next address the question whether Appellants must exhaust their administrative remedies before seeking relief in the Thurston County Superior Court. Generally, RCW 34.05.534 requires that a person exhaust "all administrative remedies available within the agency whose action is being challenged, or available within any other agency authorized to exercise administrative review". However, a court may relieve a person from the exhaustion requirement if it is shown that the administrative remedy would be patently inadequate, that exhaustion of remedies would be futile, or that the grave irreparable harm that would result from requiring the person to exhaust administrative remedies clearly outweighs the public policy requiring exhaustion.[54]

Besides arguing that the PCHB lacks jurisdiction to adjudicate their claim, Appellants also contend that exhaustion of remedies (1) would be inadequate because the PCHB cannot issue the type of relief Appellants are seeking, (2) would be futile because the PCHB has previously demonstrated its unwillingness to question Ecology's categorical exemption decisions, and (3) would lead to grave, irreparable harm because of the inadequacy of available administrative remedies.[55]

---

[53]*Woodward*, at 332-33.

[54]*See* RCW 34.05.534(3); *see also State v. Tacoma-Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 283-84, 622 P.2d 1190 (1980).

[55]Reply Brief of Appellants, at 7-13.

■ Appellants' complaint seeks both declaratory and injunctive relief.[56] RCW 43.21B.100 requires the PCHB to make findings of fact and prepare a written decision on each case it adjudicates.[57] If the PCHB finds that Ecology violated SEPA in issuing certain NPDES permits, RCW 43.21B.100 not only authorizes the PCHB to issue a written decision to that effect, but obligates it to do so. Appellants' allegation that the PCHB cannot grant them declaratory relief is therefore not correct.[58] However, we find no Washington statutes or cases authorizing the PCHB to issue injunctions.[59] Appellants also argue that because the PCHB cannot grant them complete relief, exhaustion of administrative remedies is not required.

■ The futility exception to the exhaustion of remedies doctrine is premised on the idea that courts will not require vain and useless acts.[60] In *Orion Corp. v. State*,[61] Orion brought an inverse condemnation action alleging that state and county shoreline management policies had rendered its property virtually useless. While petitioners argued that Orion failed to exhaust its administrative remedies, this court held that exhaustion was not required because both the State and Skagit County had adopted policies aimed at maintaining the area, including Orion's land, in its natural

---

[56]Clerk's Papers, at 41. Appellants' Complaint for Declaratory and Injunctive Relief and Petition for Review.

[57]RCW 43.21B.100 states that "[t]he hearings board shall make findings of fact and prepare a written decision in each case decided by it . . .".

[58]*Contra, Seattle v. Department of Ecology*, 37 Wn. App. 819, 823, 683 P.2d 244 (1984).

[59]But RCW 43.21B.320 does grant the PCHB authority to stay agency orders. Subsection (1) states, in part, that "[a] person appealing to the hearings board an order of the department . . . may obtain a stay of the effectiveness of that order".

[60]*Orion Corp. v. State*, 103 Wn.2d 441, 458, 693 P.2d 1369 (1985).

[61]103 Wn.2d 441, 693 P.2d 1369 (1985).

state.[62] In concluding that exhaustion would be futile, this court considered the fact that the Legislature had passed the Shoreline Management Act of 1971 limiting development in certain areas, and that Skagit County had implemented a shoreline protection policy placing similar restrictions on landowners like Orion for use of their property.[63]

Appellants in this case call attention to no legislation or statewide policy which would support their argument that appeal to the PCHB would be futile. Instead, they cite only one 1986 PCHB decision to support their conclusion that pursuing a claim before the PCHB would be futile.[64] The decision does not support their futility argument.

■ Appellants' final argument is that requiring them to exhaust administrative remedies before appealing to the superior court would cause irreparable harm to the environment because the mills in question would be allowed to continue dumping allegedly toxic wastes into the state's surface waters while Appellants' case is pending before the PCHB. If the facts underlying their claim are proven or accepted as true (that is, that the mills are dumping hazardous wastes into Washington's surface waters and that the impact of doing so is as bad as Appellants contend), the irreparable harm exception conceivably might apply. However, Appellants presented no evidence to support such a conclusion. Merely claiming that dumping toxic wastes into the state's surface waters will cause irreparable harm to the environment is not enough. There must be sufficient evidence to establish the claim.

## Intervention of Right

■ The final question to be resolved is whether the trial court properly granted intervention of right to the North-

---

[62]*Orion,* at 457.

[63]*Orion,* at 457-59.

[64]Reply Brief of Appellants, at 8-9, referring to exhibit "C", *Weyerhaeuser Co. v. DOE,* PCHB 85-220 (1986), at 27.

west Pulp and Paper Association (NWPPA) under CR 24(a). Among other instances, CR 24(a) permits "intervention of right" when an applicant "claims an interest relating to the property or transaction which is the subject of the action and [the applicant] is so situated that the disposition of the action may as a practical matter impair or impede [the applicant's] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[65] At issue here is whether NWPPA has a legally protected interest in the subject of this action. NWPPA is a nonprofit trade association representing pulp, paper, and pulping chemical industries in Washington and other Northwest states.[66] Because the mills whose permits are being challenged are members of NWPPA, the association contends that the trial court properly allowed it to intervene in order to protect its members' rights.[67] In argument before this court, counsel for NWPPA stated that all the holders of the challenged permits were members of the association. This is a sufficient basis for allowing intervention by the association.

## CONCLUSION

We affirm the Thurston County Superior Court in granting the motion of the Washington State Department of Ecology, et al., to dismiss the declaratory judgment action of

---

[65]*See generally Marino Property Co. v. Port Comm'rs*, 97 Wn.2d 307, 316, 644 P.2d 1181 (1982) (citing *American Discount Corp. v. Saratoga West, Inc.*, 81 Wn.2d 34, 42, 499 P.2d 869 (1972)). In deciding whether a party seeking intervention under CR 24(a) has demonstrated a sufficient interest, *American Discount Corp.* states, at page 42:

A proper determination of the sufficiency of the claimed "interest" of a particular intervenor cannot be made in a vacuum, out of the context in which the claim is asserted. Rather, it is for the court in each instance to analyze and balance the relative concerns, not only of the absentee in having [its] interest protected, but also of the parties to the main action in controlling their own lawsuit, and of the public in the efficient resolution of controversies.

[66]Brief of Respondent NWPPA, at 1.

[67]Brief of Respondent NWPPA, at 1.

Dioxin/Organochlorine Center, et al., and in allowing intervention of right to the Northwest Pulp and Paper Association.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, GUY, and JOHNSON, JJ., concur.