2014 AUG 25   AM 10: 55


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Guardianship of DOROTHY MAY KERTIS, | ) ) ) | No. 70909-7-I |
| An incapacitated person, | ) ) | DIVISION ONE |
| DIANNA PARISH, Guardian, | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| TERRY L. KERTIS, | ) ) | |
| Appellant. | ) | FILED: August 25, 2014 |

SCHINDLER, J. — The superior court entered a five-year domestic violence protection order (DVPO) restraining Terry L. Kertis from having contact with his incapacitated mother Dorothy May Kertis. The court found that Terry[1] "continues to engage in conduct that places his mother . . . at risk of psychological and physical harm." Terry appeals the order denying his motion to terminate the DVPO and the motion for reconsideration. We affirm.

## FACTS

Dorothy May Kertis is the mother of Terry L. Kertis and Sandi Ross. Beginning in 2005, Dorothy lived with her daughter Sandi. After Dorothy's dementia became more

---

[1] We use first names for purposes of clarity and mean no disrespect by doing so.

advanced a couple of years later, Sandi made arrangements for Dorothy to live at the Mountain View Adult Family Home.

Sandi died in July 2009. Sandi's daughter Dianna Parish filed a petition to establish a guardianship for Dorothy and her estate. Terry opposed the guardianship. The court entered an order establishing the guardianship. The court appointed Diana as the guardian (Guardian) and Dianna's brother Richard Ross as the standby guardian (Standby Guardian). In October 2009, the Guardian made arrangements to move Dorothy to the memory care unit at the Fidalgo Care Center and Rosario Assisted Living facility (Fidalgo).

2010 Domestic Violence Protection Order

On May 20, 2010, Fidalgo Resident Care Director Laura Willingham contacted the Guardian to express concerns about Terry's visits with Dorothy.

On May 27, 2010, the Guardian filed a motion for show cause hearing and ex parte domestic violence protection order (DVPO) to restrain Terry from contacting Dorothy or the Guardian's father, Gary Ross. In support, the Guardian attached her declaration, a declaration of the Standby Guardian, and the letter from Fidalgo.

The Guardian alleged that Dorothy "is incapacitated and is a vulnerable adult," that Terry "continues to place his mother at risk of personal harm," and that he "cannot control his impulses." The Guardian asserts Terry "refuses to abide by the terms and conditions placed upon his visits with his mother," and the staff at Fidalgo noticed "a pattern of increased agitation from Dorothy after Terry's visits." The Guardian alleged Terry's conduct "is impacting [staff's] ability to provide care for Dorothy and the other residents." The Guardian also alleged Terry "has stolen my grandmother's property

2

from her house" and he "has a long and well-documented history of alcohol and drug abuse and it clearly is not in remission." In addition, the Guardian alleged Terry harassed and threatened Gary.

In the letter from Fidalgo, Willingham explains that Dorothy requires 24-hour supervision because she "has poor safety awareness and is at risk for [running away]" due to advanced dementia. Willingham states Dorothy is "a vulnerable adult who is subject to, and from our accounts, influenced by negative and potentially unsafe interactions with her Son [Terry]."

Willingham describes a history of Terry "visiting his mother spontaneously." Willingham states that "[r]ecently, his visits have appeared to cause emotional distress for [Dorothy] and . . . caused our facility staff great concern for her safety." Willingham cites one incident in particular where Terry attempted to visit Dorothy very early in the morning and left a pair of scissors and an open box-cutting knife.[2] On another occasion, Fidalgo staff discovered Terry trying to get into his mother's room at 1:00 a.m. and that "he may have been intoxicated as he was very aggressive verbally and presented to [staff] as 'threatening.' " Willingham describes how Fidalgo tried to work with Terry to schedule visits at times when staff could be present, but Terry "was not cooperative with this arrangement" and tried to visit Dorothy at night or on weekends when staff were unavailable to supervise.

The Standby Guardian states that when Dorothy was living at Mountainview Adult Family Home in 2009, caregivers observed Terry "coercing signature from his mother on documents." According to the Standby Guardian, he later learned Terry used

_____

[2] Willingham also describes incidents where Terry put other residents at risk, including handing out cigarettes to residents in the memory care unit and giving apple slices to residents who were unable to swallow "regular texture food."

Dorothy's signatures "to gain access to her private medical information and to transfer co-ownership of one of her bank accounts into his name," had repeatedly attempted to gain access to his mother's bank accounts, and had "repeatedly [been] observed prowling" Dorothy's home.

On May 27, the court set a show cause hearing for June 11 and entered a temporary DVPO restraining Terry from contacting Dorothy or Gary. On May 28, Terry was arrested for violating the temporary DVPO by trying to visit Dorothy and contact Gary.

Terry attended the show cause hearing on June 11. Terry did not dispute any of the allegations. The court entered a one-year DVPO. The order states, in pertinent part:

> Based upon the remarks of those present and a review of the files and records herein, the court finds that TERRY LEE KERTIS has engaged in conduct that places his mother at risk of psychological and physical harm. . . .
>  . . . .
> **Violation of a Restraining Order . . . with actual notice of its terms is a criminal offense under Chapter 26.50 RCW and will subject the violator to arrest. RCW 26.09.060.**[3]

The court also found that Terry "has engaged in conduct that constitutes harassment of GARY ROSS, including threatening phone calls."[4]

On June 24, 2010, Terry was charged with violating the DVPO by attempting to visit Dorothy at Fidalgo. On August 8, Terry was charged with violating the DVPO by attempting to contact Gary.

---

[3] Emphasis in original.
[4] Emphasis in original.

4

In January 2011, Terry was charged with telephone harassment for leaving voicemails threatening to harm Gary when the DVPO expired and threatening to kill the Guardian and the Standby Guardian if they attempted to move Dorothy to Seattle.

Terry pleaded guilty to violation of the DVPO and telephone harassment.[5] The court ordered Terry to obtain a drug and alcohol evaluation, obtain a mental health evaluation, and comply with all treatment recommendations. Terry served approximately 100 days in jail and enrolled in an alcohol relapse prevention program. Following his release from jail on April 25, 2011, Terry continued to participate in the relapse prevention program.

2011 DVPO

On June 2, 2011, the Guardian filed a petition to renew and modify the 2010 DVPO. The Guardian asked the court to renew the DVPO for five years and include a specific provision to prevent Terry from "molesting, harassing, threatening, or stalking" by "telephonic, audiovisual, or other electronic means." In addition to violating the terms of the 2010 DVPO, the Guardian alleged that in 2010, Terry told the staff at Fidalgo that he was going to remove Dorothy from the facility, and in November, he went to Fidalgo demanding to see his mother. The Guardian also reported that the Veterans Administration told her Terry had attempted to gain access to Dorothy's information.

In response to the motion to renew the DVPO, Terry admitted violating the 2010 DVPO but states that the "Ross family" has made "false accusations," including accusing him of stealing from Dorothy.

---

[5] Terry also pleaded guilty to malicious mischief for throwing a rock through the Guardian's car windshield.

5

The court granted the request to renew the DVPO for five years. The court ruled, "It's pretty clear to me that [Terry] poses a risk to both his mother and to [the Guardian] and [Gary]." The June 10, 2011 DVPO states, in pertinent part, "[T]he court finds that TERRY LEE KERTIS continues to engage in conduct that places his mother, DOROTHY MAY KERTIS, at risk of psychological and physical harm."[6] The DVPO restrains Terry from contacting Dorothy and expires on June 10, 2016. However, the order specifically states that the DVPO "[m]ay be lifted or modified by further Court order."

The DVPO also restrains Terry from having contact with Gary. The court found, "TERRY LEE KERTIS continues to engage in conduct that constitutes harassment of his brother-in-law, GARY WAYNE ROSS, including threats of bodily harm."[7]

Motion to Terminate the DVPO

On May 22, 2013, Terry filed a motion to terminate the June 10, 2011 DVPO, arguing there had been a substantial change in circumstances. Terry also challenged entry of the 2010 DVPO and the 2011 DVPO, claiming there was no evidence he committed domestic violence against his mother. In his declaration in support of the motion to terminate, Terry states that in the last two years, he had participated in an alcohol relapse prevention program and that he no longer has "the problems with alcohol that I did before the restraining orders were entered."

Before the hearing on the motion to terminate the DVPO, Terry and the Guardian entered into an "Agreed Order Modifying Restraining Order Entered on June 10, 2011" (Agreed Order). The Agreed Order allows Terry to have weekly supervised visits with

---

[6] Emphasis in original.

[7] Emphasis in original.

Dorothy. The Agreed Order also states that if there are "no problems" after eight visits, the order "may be further modified to increase the frequency of the visits, change the scheduled time of the visits, or increase the time allotted for each visit." The court entered the Agreed Order on June 4, 2013.

After approximately six supervised visits with Dorothy, Terry renoted his motion to terminate the DVPO. In support, he submitted another declaration, a copy of the mental health evaluation, and a copy of the discharge summary for the alcohol relapse prevention program. Terry also submitted a declaration from his spouse Tina, and a declaration from Tina's cousin Joyce Panzero.

Terry asserts he will "abide by the regular rules of the care center" and believes his visits "lift my mother's spirits and benefit her greatly." The July 2011 mental health evaluation states that Terry's prognosis is "[g]ood" and that mental health treatment is "not warranted at this time." The October 2011 alcohol relapse program discharge summary states that Terry "[c]ompleted [t]reatment" and his prognosis is "good."

Terry's spouse Tina states that she visits Dorothy on a weekly basis and since Terry started visiting again, Dorothy "smiles, her eyes light up, and she sings." Panzero accompanied Terry on five of the supervised visits. Panzero states that Terry was "very gentle towards his mother" and, in her opinion, did not require supervision. Panzero states that during one of the visits, the executive director of Fidalgo, Joe Sladich, remarked about "how much Terry had changed and was such a totally different person from three years ago."

The Guardian and Standby Guardian filed declarations in opposition to terminating the DVPO and submitted a letter from Fidalgo opposing "any proposed changes at this time."

Following the hearing on August 2, Terry submitted a supplemental brief arguing there was no evidence he committed domestic violence, the Guardian unreasonably restricted Dorothy's social life, and the Guardian failed to ensure Dorothy was able to communicate with her son.

The court denied the motion to terminate the DVPO. The order denying the motion to terminate the DVPO states, in pertinent part, "Based upon the evidence presented, the court finds that the respondent has not established by a preponderance of the evidence that termination of the order is warranted." While the court found "insufficient evidence to find a substantial change in circumstances," the order states the court "sympathizes with [Terry]'s situation and encourages the guardian to endeavor to expand visitation as justified." The order explicitly rejects Terry's attempt to collaterally attack entry of the 2010 DVPO and the 2011 DVPO, stating, "The court cannot look behind the original restraining order (DVPO) issued herein, as it was not [appealed] and becomes a verity."

Terry filed a motion for reconsideration. Terry argued he was entitled to relief under CR 60(b)(5)[8] because the 2010 DVPO and the 2011 DVPO were "void for lack of subject matter jurisdiction." Terry claimed the petitions in support of the 2010 DVPO and 2011 DVPO did not allege domestic violence.

---

[8] CR 60(b)(5) states that "the court may relieve a party or his legal representative from a final judgment [or] order" if "[t]he judgment is void."

8

The court denied the motion for reconsideration. The order states, in pertinent part:

> 1. The Court had jurisdiction to enter the original restraining order and to subsequently renew the restraining order based upon [Terry] "inflicting fear of imminent physical harm or bodily injury" on his mother, as voiced by his mother's guardian, who stands in his mother's shoes.
> 2. The court file contains voluminous evidence, including declarations made under oath, and a detailed letter from Fidalgo . . . , indicating that [Terry] engaged in conduct that placed his mother at risk of emotional and psychological harm as well as physical harm.

## ANALYSIS

Terry appeals the order denying his motion to terminate the DVPO and the order denying reconsideration."[9]

First, Terry attempts to collaterally attack entry of the 2010 DVPO and the 2011 DVPO, arguing the court did not have subject matter jurisdiction. Terry asserts the court did not have subject matter jurisdiction to enter the 2010 DVPO or the 2011 DVPO because the petitions did not comply with the statutory requirements of the Domestic Violence Prevention Act, chapter 26.50 RCW.

Superior courts in Washington State have subject matter jurisdiction over all types of cases unless jurisdiction is vested exclusively in another court. WASH. CONST. art. IV, § 6. A final order is void if the court lacked subject matter jurisdiction. In re Marriage of Buecking, 179 Wn.2d 438, 446, 316 P.3d 999 (2013). The court had

---

[9] We granted Terry's motion for accelerated review. The Guardian filed a motion on the merits to affirm and an "Amendment to Motion on the Merits." Terry filed a motion to strike the Amendment to Motion on the Merits. We grant the motion and do not consider the amendment to the motion on the merits. The Amendment to Motion on the Merits attaches documents and makes arguments related to events that occurred after the court entered its order denying Terry's motion to terminate the DVPO and the order denying reconsideration. RAP 10.3(a)(8); Dioxin/Organochlorine Ctr. v. Dep't of Ecology, 119 Wn.2d 761, 771, 837 P.2d 1007 (1992) (a reviewing court will only consider evidence admitted by the trial court). However, we note that argument in a brief, not a motion to strike, "is the appropriate vehicle for pointing out allegedly extraneous materials." Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959, review denied, 175 Wn.2d 1004, 285 P.3d 884 (2012).

subject matter jurisdiction to enter the DVPO in 2010 and 2011. The 2010 DVPO and 2011 DVPO are not subject to collateral attack on the grounds that the orders failed to comply with statutory requirements. Bresolin v. Morris, 86 Wn.2d 241, 245, 543 P.2d 325 (1975); see also City of Seattle v. May, 171 Wn.2d 847, 852-53, 256 P.3d 1161 (2011).[10]

Next, Terry contends the court abused its discretion in denying his motion to terminate the 2011 DVPO because he showed by a preponderance of the evidence that there had been a substantial change in circumstances.

We review a decision to terminate a protection order for abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). We also review a trial court's denial of a motion for reconsideration for abuse of discretion. Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). We uphold a trial court's findings if substantial evidence in the record supports them. In re Marriage of Stewart, 133 Wn. App. 545, 550, 137 P.3d 25 (2006).

Substantial evidence is a quantity of evidence sufficient to persuade a fair-minded, rational person of the finding's truth. In re Contested Election of Schoessler, 140 Wn.2d 368, 385, 998 P.2d 818 (2000). We defer to the trial court's determinations

---

[10] For the first time on appeal, Terry asserts that he is entitled to collaterally attack the 2010 DVPO and 2011 DVPO because the court has the inherent authority to address the restraining orders as injunctions. But as conceded at oral argument, Terry did not raise this argument below. We do not consider arguments raised for the first time on appeal. RAP 2.5(a); Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007).

on the persuasiveness of the evidence, witness credibility, and conflicting testimony. Snyder v. Haynes, 152 Wn. App. 774, 779, 217 P.3d 787 (2009).

Under RCW 26.50.130(3)(a), the court may not terminate a DVPO "issued for a fixed period exceeding two years . . . unless the respondent proves by a preponderance of the evidence that there has been a substantial change in circumstances such that the respondent is not likely to resume acts of domestic violence against the petitioner." The petitioner "bears no burden of proving . . . a current reasonable fear of imminent harm by the respondent." RCW 26.50.130(3)(a).

RCW 26.50.130(3)(b) states that the court shall consider "only factors which address whether the respondent is likely to commit future acts of domestic violence against the petitioner or those persons protected by the protection order."[11] The statutory factors a court may consider in determining whether there has been a substantial change in circumstances include:

> (i) Whether the respondent has committed or threatened domestic violence, sexual assault, stalking, or other violent acts since the protection order was entered;
> (ii) Whether the respondent has violated the terms of the protection order, and the time that has passed since the entry of the order;
> (iii) Whether the respondent has exhibited suicidal ideation or attempts since the protection order was entered;
> (iv) Whether the respondent has been convicted of criminal activity since the protection order was entered;
> (v) Whether the respondent has either acknowledged responsibility for the acts of domestic violence that resulted in entry of the protection order or successfully completed domestic violence perpetrator treatment or counseling since the protection order was entered;
> (vi) Whether the respondent has a continuing involvement with drug or alcohol abuse, if such abuse was a factor in the protection order;
> (vii) Whether the petitioner consents to terminating the protection order, provided that consent is given voluntarily and knowingly;

---

[11] Emphasis added.

11

(viii) Whether the respondent or petitioner has relocated to an area more distant from the other party, giving due consideration to the fact that acts of domestic violence may be committed from any distance;

(ix) Other factors relating to a substantial change in circumstances.

RCW 26.50.130(3)(c).

The court denied the motion to terminate the 2011 DVPO because Terry had "not established by a preponderance of the evidence that termination of the order is warranted," and "[t]here is insufficient evidence to find a substantial change in circumstances." The record supports the court's decision.

Below, the Guardian argued Terry had a history of relapsing and it was too soon after agreeing to the resumption of weekly supervised visits to consider additional changes to the DVPO. Fidalgo also expressed concerns that the motion to terminate was premature, stating, "While the past few weeks have given us hope for [Terry]'s positive changes, such little time does not erase the significant concerns we have as a direct result of years of poor decision making which continuously put our elders and staff at risk."

Terry argued the evidence showed a "substantial change in circumstances" because he had not violated the DVPO since 2010, he completed a court-ordered alcohol relapse prevention program in October 2011, and the recent supervised visits with his mother went well. But in determining whether there has been a substantial change in circumstances, "the court may not base its determination solely on [t]he fact that time has passed without a violation of the order." RCW 26.50.130(3)(d)(i). There is also no dispute that Terry had been previously convicted of violating the 2010 DVPO. In addition, the record shows Terry had not taken responsibility for the conduct that resulted in entry of the 2011 DVPO. Two months before filing the motion to terminate,

Terry filed motions denying that he harmed or threatened to harm his mother, and accusing the Guardian and Standby Guardian of committing numerous "illegal acts" and of conspiring to "[take] my mother from me ILLEGALLY!"[12]

Terry also contends the order denying his motion to terminate the DVPO violates the statute that prohibits restricting the liberty interest of the incapacitated person only to the minimum extent necessary. We disagree.

Under the guardianship statutes, the liberty and autonomy of an incapacitated person "should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs." RCW 11.88.005. While the guardian has the authority to " 'assert the incapacitated person's rights and best interests,' " it remains at all times the responsibility of the court to make the decision as to an incapacitated person's best interest. In re Guardianship of Lamb, 173 Wn.2d 173, 191 n.13, 265 P.3d 876 (2011) (quoting RCW 11.92.043(4)).

The record shows that in denying the motion to terminate the 2011 DVPO, the court took into consideration the paramount concern to act in the best interest of Dorothy and protect her health and safety. The court also clearly considered the desire to maintain a relationship with Terry. While the court found that Terry continued to engage in conduct that put his mother "at risk of psychological and physical harm," the court specifically states that the five-year DVPO "[m]ay be lifted or modified by further Court order." Although finding that Terry presented insufficient evidence to show a substantial change in circumstances, the court expressly states that it "sympathizes with [Terry's] situation and encourages the guardian to endeavor to expand visitation as

---

[12] Emphasis in original, internal quotation marks omitted.

justified." Clearly, nothing precludes Terry from filing another motion in the future under RCW 26.50.130.[13]

We affirm denial of the motion to terminate the June 10, 2011 DVPO and the order denying the motion for reconsideration.

WE CONCUR:

---

[13] For the first time on appeal, Terry argues that the 2010 DVPO and the 2011 DVPO violated his constitutional right to due process and equal protection. Because Terry fails to identify the basic components of a due process or equal protection claim, we decline to address this issue. Meyer v. Univ. of Wash., 105 Wn.2d 847, 855, 719 P.2d 98 (1986) (" 'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion' ") (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970)); Holland v. City of Tacoma, 90 Wn. App. 533, 537-38, 954 P.2d 290 (1998).